## LITTLE *v.* WILLIAMS.

Opinion delivered June 22, 1908.

1. WATERS—RIGHT TO BED OF LAKE.—The title of the owner of land adjoining a nonnavigable lake extends to the center of such lake by virtue of his riparian ownership. *Rhodes* v. *Cissel,* 82 Ark. 367, followed. (Page 46.)

2. CLOUD ON TITLE—BURDEN OF PROOF.—The plaintiff in a suit to quiet title must succeed, if at all, upon the strength of her own title, and not upon the weakness of the title of her adversaries. (Page 46.)

3. WATERS—OWNERSHIP OF BED OF LAKE.—Where the plats of the government survey and the field notes which accompany them show that certain lands at the time of the survey constituted the bed of a nonnavigable lake, the burden is upon one who seeks to maintain that the lands were not at that time within such lake bed. (Page 46.)

4. PUBLIC LANDS—CONCLUSIVENESS OF PUBLIC SURVEYS.—The official surveys made by the government are not open to collateral attack in an action at law between private parties. (Page 48.)

5.  WATERS—OWNERSHIP OF LAKE—PRESUMPTION.—Where a patent conveying swamp land from the United States to the State described the land as bordering on the meandered line of a nonnavigable lake, the effect was to vest *prima facie* title to the bed of the lake, as shown in the plats, from meandered shore lines to center; and a conveyance from the State in turn to its grantees had the same effect. (Page 50.)

6.  SWAMP LAND GRANT—WHEN TITLE PASSED.—Though the Swamp Land Grant was a grant *in praesenti,* the legal title did not pass until the lands were duly selected as swamp and overflowed, and the patents were delivered. (Page 50.)

7.  SAME—CONCLUSIVENESS OF COMPROMISE.—Under the terms of a compromise entered into between the United States and the State of Arkansas, and witnessed by statute of Arkansas of March 10, 1897, and by act of Congress of April 29, 1898, the State expressly relinquished her claim to any unpatented swamp land. (Page 50.)

8.  SAME—CONCLUSIVENESS OF PATENT.—Where, in accordance with the government survey, a patent conveying swamp land to the State described the land as bordering upon the meandered line of a nonnavigable lake, until the government elects to correct mistakes in the survey, no one else can complain that the land so described did not border upon the lake, but that swamp land intervened at the time the survey was made. (Page 50.)

9.  EVIDENCE—JUDICIAL NOTICE OF SURVEYS.—The courts take judicial cognizance of the general system of government surveys, and that lands are surveyed and platted into sections and parts of sections and into fractional sections where they abut on streams or other bodies of water. (Page 52.)

10. PUBLIC LANDS—DESCRIPTION.—A patent from the United States conveying as swamp land certain land in a designated section, township and range will be construed. by reference to the plat of the public surveys, and will not be held to convey land which does not appear on the public surveys. (Page 52.)

Appeal from Mississippi Chancery Court, Chickasawba District; *Edward D. Robertson,* Chancellor; affirmed.

STATEMENT BY THE COURT.

This case involves a controversy concerning the title to a large body of unsurveyed and unoccupied land containing 1,000 or 1,200 acres of land within the meandered lines of what is known as Walker's Lake according to the survey made in 1847 by the United States government.

The plaintiff, Johanna Little, claiming to be in actual possession of the lands in controversy, instituted this suit in chan-

cery against the defendants, J. J. Williams and others, to quiet her alleged title.

The plaintiff claims title to the land through the following chain:

First—United States to State of Arkansas, act of Congress, dated September 28, 1850, donating swamp and overflowed land.

Second—State of Arkansas to Board of Directors of St. Francis Levee District, act of General Assembly, dated March 29, 1893, donating all lands in the district owned by the State.

Third—Board of Directors of St. Francis Levee District to plaintiff, deed dated March 11, 1903.

The defendants are the owners by mesne conveyances, running back to the State of Arkansas and the United States, of the fractional sections, according to government survey, of land bordering on the meandered line of Walker's Lake, and claim title to the lands in controversy by virtue of their alleged riparian rights as such owners.

Walker's Lake is, and at the time of the government survey was, a shallow, non-navigable lake. The testimony is conflicting as to the true boundaries of the lake and the character of the territory now in controversy—whether it was water or swamp land—at the time of the government survey. Testimony introduced by the plaintiff tends to establish the fact that the territory was swamp land at that time; and the testimony of defendants' witnesses tends to show that at that time the waters of the lake extended up to the meandered lines of the survey, but have since then receded so as to leave the land dry.

The parties, in addition to introducing the plats and field notes of the government survey and depositions of witnesses, entered into the following written agreement as to facts, which writing was a part of the record:

"In order to avoid labor and expense in taking testimony, it is agreed by counsel representing defendants that all of the surveyed lands in the vicinity and locality of what would be south ½ of section 25, the whole of section 36, township 16, range 12 east, and northwest ¼ and south ½ of section 31, township 16, range 13 east, Mississippi County, Arkansas, if same were surveyed, were in September, 1850, swamp and overflowed lands, and passed to the State of Arkansas under the grant of the United

States of date September 28, 1850, and that the townships including Walker's Lake, as meandered on the map, were included by the Secretary of the Interior of the United States government in the list of lands prepared by him and forwarded by him to the Governor of Arkansas, showing the lands which passed to · the State under the grant of 1850, and that said lands embraced in said list were subsequently covered by patents from the government of the United States.

"And it is further agreed that the State of Arkansas never undertook to convey the said lands embraced within the meandered lines of Walker's Lake, except as same might have passed by operation of law to the defendants as riparian owners, prior to the land grant made by the State to the St. Francis Levee Board in 1893."

The chancellor, after hearing the evidence, dismissed the complaint for want of equity, and plaintiff appealed.

*Henry Craft,* for appellant.

1.  The title of a riparian owner of land bordering upon a pond or shallow lake extends only to the water's edge. 25 Ark. 120; 9 N. H. 461; 13 Wis. 692; 42 Wis. 248; 28 Vt. 257; 13 Me. 201; 48 N. J. Eq. 42; Angell on Watercourses, 41; 44 S. E. 286. The United States Supreme Court holds that it is for the States themselves to say what waters and to what extent this prerogative of the State over lands under the water shall be exercised. 140 U. S. 371, 35 Law Ed. 428. And this State in the case first above cited has allied itself with those States which hold a riparian owner limited by the edge of the water which bounds his land.

2.  Appellees' contention that the Government survey and plat showing their fractional sections abutting upon the meandered line of Walker's Lake is conclusive evidence that the lake was there when the survey was made, and fixes their rights as riparian owners, is not supported by the authorities. 185 U. S. 47, 46 Law. Ed., 800.

3.  In fact, the lake was not within a mile of the eastern meandered line as shown by the survey. The land was never the bed of a lake, but was swamp and overflowed land. The record shows that it was swamp and overflowed land from 1850 to the

building of the levee along the Mississippi river, and stipulations of counsel agree that it was swamp and overflowed land in 1850 when the act of Congress was passed, and as such passed to the State. The proof shows that it was never the bed of a lake, and that Walker's Lake as meandered upon the Government map never existed. If in 1850 the land was covered by water and was the bed of a shallow lake, nevertheless it was swamp and overflowed land, came within the operation of the Government grant, title was vested in the State, and the land was never subject to the law of accretion and reliction applying to real lakes and navigable waters. 109 La. Ann. 625. The evidence clearly establishes the fact that the Government surveyors made a mistake in meandering the lake, but the Government was not bound by the mistake. 140 U. S. 406. The effect of the mistake was to leave the land between the water line and the meandered line owned by the Government. 175 U. S. 300, 44 Law. Ed. 171; 4 Neb. 245; 75 Ia. 20; 78 Wis. 240.. When the water is controlled by artificial means, the land which is reclaimed is not subject to the law of riparian ownership, the elements of gradual, "imperceptible and insensible" recession being lacking. 25 Ark. 120. See, also, 138 U. S. 584, 34 Law. Ed. 1063. The questions involved in this case have already been passed upon by this court. See 77 Ark. 338.

4. It is shown by agreement that the lands in question were selected by the Secretary of the Interior "as swamp and overflowed lands," and by him conveyed as such to the State in 1850. This determines the nature of the lands at that time, and the burden of proving that the nature of the lands changed was upon the alleged riparian owners. The presumption is that they continued to be swamp and overflowed land until reclaimed by the building of the levee. Such land "is to be treated as land." 175 U. S. 308.

*N. W. Norton, amicus curiae,* for appellant.

1. The pertinent fact in the agreement is that *the townships* including Walker's Lake were selected and patented to the State as swamp and overflowed lands. Since the lands were selected and patented by townships, it follows that all land in the townships passed, whether included in sections or not, and whether submerged or not. 190 U. S. 452; 23 Sup. Ct. Rep.

651. Lands are not the less lands for being covered by water. 7 Ad. & El. 671. The Swamp Land Act was a grant *in praesenti* to the State of all swamp and overflowed lands within its boundaries. 24 Ark. 431. The State's title does not depend alone upon the deed from the United States, but upon the grant contained in the act. 76 Ark. 464. The fact that the land was meandered and platted as a lake does not make it other than swamp and overflowed land. 11 Fed. 389; 77 Ark. 338; 27 Supt. Ct. 679. If the entire area platted by the surveyors as Walker's Lake had been an open lake, it would nevertheless have passed to the State as swamp land, under the patent for the township. 138 U. S. 584.

2. The title of the State passed to the Board of Directors of the St. Francis Levee District. Acts 1893, p. 172; 76 Ark. 442.

3. A swamp land deed will pass title to no more land than is described in it. 7 N. E. 379. It does not follow that if the State obtained title to the lake bed from the Government, the purchasers of abutting fractional sections from the State got the bed of the lake also. It was said with reference to navigable waters: "If they (the States) choose to resign to the riparian proprietors rights which properly belong to them in their sovereign capacity, it is not for others to raise objections." 94 U. S. 324. And this rule was extended to non-navigable lakes. 190 U. S. 508, 23 Sup. Ct. 685. What passes from the State to its vendee is, therefore, purely a question of local law.

4. As to title under the doctrine of accretion or reliction, the burden of proof is on appellees to establish the fact of accretion or reliction. Therein they have failed, but on the contrary have proved conditions practically the same as in *Chapman & Dewey* v. *Bigelow*, 77 Ark. 338.

*S. S. Semmes* and *Will J. Driver,* for appellees.

1. The burden of proof is upon appellant to show title in herself. If she recover at all, it must be upon the strength of her own title, not upon the weakness of her adversary's. 77 Ark. 338; 82 Ark. 301.

2. Appellees are owners of the lands in controversy by virtue of being the grantees of the original surveyed lands riparian to Walker's Lake, which is a shallow, nonnavigable lake.

These lands at the time of the Government survey, and of the act of Congress of·1850, were the bottom or bed of that lake, and have since become uncovered and dry. The legal effect of the grant of 1850 was to convey to the State the right, title, and interest of the United States to the bed of the lake, the latter having made no reservation thereof in the grant. The State having made no reservation thereof, nor imposed any restriction, her grantees took respectively, ratably with their frontage on the lake, to its center. 82 Ark. 367; 140 U. S. 380; 52 Minn. 181.

3. Reservation of any portion of the lake or of the bed thereof, either by the Government or by the State, must have been express,—no reservation can be implied, in case of conveyance of lands along streams. 17 Am. & Eng. Enc. of L. (2 Ed.), 533; 49 N. E. 692. And there is no proof whatever of any such reservation.

4. The survey of 1847 became the official authority of the Government in establishing the corners, bearings, lines and area subject to entry of the lands surveyed, and is strong *prima facie* evidence of its correctness. It can only be overcome by clear and positive proof of a gross mistake, or fraud, on the part of the surveyor in running the lines. 11 Sup. Ct. 818; *22 Id.* 566.

5. If any portion of the lands in controversy was highland, and not a part of the bottom of the lake in 1847, by appellant's own testimony it was an unsurveyed island out in the lake. If so, the title passed to appellees as riparian owners. If not an island, it was nothing more than a ridge or tongue of land projecting out into the lake, which the surveyor chained across as being too unimportant to meander. He was the best judge of that; and this situation would, under the proof, in no way affect the riparian rights of appellees. 11 Sup. Ct. 818; *Id.* 822.

6. The record does not establish that Walker's Lake was a mere "overflow lake" from the Mississippi river, the lands becoming uncovered as the overflow subsided, and remaining dry during the greater part of the year. On the contrary, the proof shows that after the overflows subsided the original lake remained permanently there. The Louisiana case, 109 La. 625, cited by appellant is not controlling in this case, because in that State the civil law, not the common law, prevails, and that decision was founded on an act of the Legislature peculiar to that State.

*Allen Hughes,* for appellees.

1. The placing of a comma before "including" in the clause of the stipulation reading, "* * * the townships including Walker's Lake as meandered on the map," has given a totally different meaning to that clause from the construction placed thereon by the court and counsel at the trial. There it was construed as though it were written: "The townships which include," etc. That construction should prevail here. 20 Enc. Pl. & Pr. 659.

2. The patents did not convey legal title to the unsurveyed lands. "When lands are granted according to an official plat of the survey of such lands, the plat itself, with all its notes, lines, descriptions and landmarks, becomes as much a part of the grant or deed by which they are conveyed, and controls, so far as limits are concerned, as if such descriptive features were written upon the face of the deed or the grant itself." 128 U. S. 691; Jones on Conveyancing, § 424; 138 U. S. 573; 162 U. S. 37; 130 Ind. 593; 119 Mich. 612; 116 Mo. 201; 14 Wash. 3.

3. This court is without jurisdiction to determine the merits of appellant's claim of title. The effect of the statute, Swamp Land Grant, was to devolve upon the Secretary of the Interior the duty and confer upon him the power of determining what lands were swamp and overflowed lands, and to make his office the tribunal whose decisions were to control. Except in cases where he fails or refuses to act, his jurisdiction is exclusive. 6 Fed. Stat. Ann. 404, § 2; 46 Ark. 17; 202 U. S. 60; 195 U. S. 480; 173 U. S. 473; 164 U. S. 559; 168 U. S. 589; 71 Ark. 491; 190 U. S. 301; 104 Fed. 18; 9 Wall. 89; *Id.* 95; 93 U. S. 169; 97 U. S. 345; 121 U. S. 488; 138 U. S. 134; 6 Fed. Stat. Ann. 411, § 2488. No dereliction of duty can be charged to the Secretary of the Interior with reference to the selection of swamp lands in this State, the State having from the first taken upon itself the selection thereof without waiting for the department at Washington to do so. Acts 1850, p. 77, § 15; Acts 1854, p. 236; Acts 1856, p. 32; Acts 1885, p. 69. While the act of Congress of 1850 was a grant *in praesenti* in the sense that the United States could not without notice, hearing, etc., thereafter confer title upon any other to the lands coming within the terms of the act, yet it was not a grant *in praesenti* in the sense that it had the same legal

effect as a patent or a deed. The legal title did not pass from the United States. 142 Fed. 985; 139 Fed. 941; 29 Fed. 830; 116 Ia. 352; 93 N. W. 52; 196 U. S. 573; 129 Fed. 1; 40 Miss. 504; 67 Mo. 102; 71 Mo. 127; 63 Mo. 129; See, also, 154 Fed. 425; 22 Ia. 579; 29 Fed. 837; 90 N. W. 842; 23 Cal. 431; 65 Mo. 233; 105 N. W. 233; 91 N. W. 294; 124 Fed. 819; 104 Fed. 118; 13 App. D. C. 279; 137 Fed. 516.

4. The act of 1893 donating lands to the Levee Board did not include unsurveyed lands. Statutes granting public property to private individuals or corporations are to be strictly construed. 107 U. S. 342; 164 U. S. 190; 152 U. S. 110; Endlich, Interp. Stat., § 356; 26 Am. & Eng. Enc. of L. (2 Ed.), 672; 1 Jones on Conveyancing, § 548. The word "all" used in the act is not to be construed in its general or broad sense. 1 Cowper, 9; 60 L. R. A. 415; 15 Ga. 518; 48 Ark. 305; 18 Pa. St. 388; 54 N. Y. 25; 2 Am. & Eng. Enc. of L., (2 Ed.), 141; 1 Words & Phrases, 312.

5. Beds of unnavigable lakes are the property of the riparian proprietors. 197 U. S. 510; 159 U. S. 87; 152 U. S. 1; 140 U. S. 406; *Id.* 371; 94 U. S. 324; 82 Ark. 367; 24 Ark. 102; 25 Ark. 120; 50 Ark. 466; 140 Fed. 781.

If at the time of the survey the lake was a body of water, the title of the United States to its bed was that of a riparian proprietor, which passed with its patent and every subsequent conveyance. 69 Ark. 34; 71 Ark. 390; 190 U. S. 508; Gould on Waters, § § 195, 196. Meander lines are not lines of boundary. 2 Farnham on Waters, 1464; Gould on Waters, § 76; 190 U. S. 452; 134 U. S. 178; 7 Wall. 272.

6. On the question of mistake in the survey, see 39 Fed. 74; 16 Pet. 166; 140 U. S. 406, 412; 52 Minn. 181.

*Murphy, Coleman & Lewis,* for appellees.

1. No one but the United States, and perhaps the State, can question the correctness of the Government survey. If there was a mistake in the survey, the State alone had the right to complain, the official survey and plats being conclusive between individuals, and none but the State could claim that the title terminated at the meander line. 2 Farnham on Water and Water Rights, § 418; *Id.,* § 422; 20 How. 264; 128 U. S. 696; 158 U

S. 256; 90 N. W. 966; 197 U. S. 510; 23 Tex. 241; 12 Johns. 77; 96 Ia. 414; 40 Minn. 455; 54 Minn. 290; 40 Am. St. Rep. 328. No one can set aside a patent on the ground of fraud except the Government or the State itself. 46 Fed. 224; 61 Fed. 777; 76 Fed. 157; 82 Fed. 160; 18 How. 173; 3 Wall. 478; 19 How. 323; 101 U. S. 514; 104 U. S. 636; 21 Tex. 728; 28 Tex. 146; 81 Tex. 603; 9 Ala. 594; 16 Cal. 295; 54 Ark. 258.

2. Where land is reserved from a grant, either by express terms or by intendment of law, it would not pass under the grant, though the reservation be afterwards removed. 113 U. S. 629; 145 U. S. 535; 158 U. S. 85; 132 U. S. 357; 189 U. S. 447; 13 Pet. 497; 92 U. S. 733; 54 Ark. 266. It follows, therefore, that, as the bed of Walker's Lake was excepted from the grant of the Levee Board by intendment of law, because it had already been disposed of to the riparian owners, a cancellation of such previous disposition for fraud or mistake would not inure to the benefit of the Levee Board or its grantee, but would revest the title in the State.

McCULLOCH, J., (after stating the facts.) The first question presented is one of fact, whether at the time of the Government survey in 1847 the land in controversy was a portion of the bed of Walker's Lake, or whether it was swamp land; for, if the former state of fact is found to have existed, then the title of the owners of adjoining lands extended to the center of the lake by virtue of their riparian rights as such owners; and, since the recession or drying up of the waters has left the land exposed, it belongs to them. See *Rhodes* v. *Cissel,* 82 Ark. 367, and cases therein cited.

Appellant was the plaintiff below, seeking to quiet her alleged title, and must succeed, if at all, upon the strength of her own title, and not upon the weakness of that of her adversaries. *Chapman & Dewey Land Co.* v. *Bigelow,* 77 Ark. 338. In other words, the burden of proof is upon her to show that the land in controversy was land, and not lake bed, at the time of the government survey.

In addition to that, the plats of the government survey and the field notes which accompany them show that these lands then constituted the bed of the lake, and were within the meandered lines of the lake. This establishes, *prima facie,* that the lands

were a part of the lake bed, and the burden is upon the appellant to overcome it by proof to the contrary.

But, thus conceding the burden to be upon the appellant, the testimony which she has adduced convinces us that she is correct in her contention as to this question of fact, and that the land in controversy was swamp land at the time of the government survey, and was not in the bed of the lake. The surveyors made mistakes in relimiting the boundary lines of the lake, and included a large amount of low swampy land, which the waters of the lake did not cover. These mistakes were not unreasonable ones, and do not demonstrate either fraud or gross carelessness on the part of the surveyors, for the evidence shows that there may have been grounds at that time to believe that the meander line followed the bank of the lake. The intervening territory between the meander line and the bank of the lake was undoubtedly of that indeterminate character, low lands partly covered by water, about which the surveyors could reasonably have been mistaken, and which they may have concluded was the bed of a shallow part of the lake. There was a slash or low place along the meander line; and, as this may have been temporarily covered by water at the time, the surveyors followed its outer line, believing it to be the shore line of the lake.

We are satisfied, however, that a mistake was made in establishing this line as the shore line of the lake. Out of the testimony of all the witnesses who testify from recollection as to the condition of the land and the boundaries of the lake many years ago, the preponderance lies, we think, with those who say that the land in controversy was swamp land, and not lake bed. In addition to this, the condition in which the undisputed evidence shows the land to be at this day, and the character of the timber growing thereon, is convincing that it was not a portion of the lake in 1847. The present banks of the lake are well marked, and have not materially changed during the memory of those persons whose testimony on the subject preponderates. We will, therefore, treat it as established that mistakes were made in survey, and that this land was in fact swamp land, and not lake bed. The real location of Walker's Lake was and is far inside the meander lines run by the surveyors. At some points the bank of the lake is over a mile from the surveyed meander line.

But, conceding this to be true, the fact remains that a meander line was surveyed, which the field notes show was intended to indicate the shore line of the lake. A body of water constituting a non-navigable lake existed then and still exists within the meander line, though a considerable distance inward from it. The plats of this survey were filed in the General Land Office of the United States, and were accepted and approved by that department of the Government as correct. In running the meander lines, the surrounding sections and parts of sections were necessarily made fractional, and, under the Swamp Land Act of 1850, surveyed land in the townships surrounding the lake were selected by the State. The selections were approved by the Secretary of the Interior, and patents were issued to the State conveying the land by description "according to the official plats of the survey returned to the General Land Office of the Surveyor General." The State of Arkansas has, from time to time, sold to individuals the surveyed lands and conveyed them by descriptions according to the plats.

Neither the Land Department of the United States nor of the State of Arkansas has ever questioned the correctness of the survey, but, on the contrary, they have up to the present time treated and do now treat them as correct; if we may view in that light a failure to take any steps looking to a correction. Can an individual question the correctness of the surveys when neither the general government nor the State government has ever done so? Can an individual acquire and assert rights in these unsurveyed lands which the Government has never asserted against the riparian rights of the adjoining owners?

The Supreme Court of the United States, as early as the case of *Spencer* v. *Lapsley,* 20 How. 264, decided that "the issue of the grant or patent conveys the title, and questions of fraud or irregularity, or excess in the survey cannot be raised by other parties than the Government."

Mr. Justice Lamar, in delivering the opinion of the court in *Cragin* v. *Powell,* 128 U. S. 691, said: "That the power to make and correct surveys of the public land belongs to the political department of the government, and that, whilst the lands are subject to the supervision of the General Land Office, the decisions of that bureau in all such cases, like that of other special tri-

bunals upon matters within their exclusive jurisdiction, are unassailable by the courts, except by a direct proceeding; and that the latter have no concurrent or original power to make similar corrections, if not elementary principles of our land law, is settled by such a mass of decisions of this court that its mere statement is sufficient. The reason of the rule, as stated by Justice Catron in the case of *Haydel* v. *Dufresne,* 17 How. 23, is that 'great confusion and litigation would ensue if the judicial tribunals, State and Federal, were permitted to interfere and overthrow the public surveys on no other ground than an opinion that they could have the work in the field done and divisions more equitably made than the department of public lands could do.'"

In *Russell* v. *Maxwell Land Grant Co.,* 158 U. S. 253, Mr. Justice Brewer, speaking for the court, said: "In the nature of things, a survey made by the government must be held conclusive against collateral attack in controversies between individuals. There must be some tribunal to which final jurisdiction is given in respect to the matter of surveys, and no other tribunal is so competent to deal with the matter as the land department. None other is named in the statutes. If in every controversy between neighbors the accuracy of a survey made by the government were open to question, interminable confusion would ensue."

The same learned Judge, in delivering the opinion of the court in *Whittaker* v. *McBride,* 197 U. S. 510, said: "The official surveys made by the government are not open to collateral attack in an action at law between private parties."

Mr. Farnham, in his work on Water and Water Rights (vol. 2, § 422), states the same doctrine, as follows:

"Where a patent issues for a fractional lot appearing by the plat of the United States survey to be bounded on one side by a meandered lake, the patent is not void so far as it purports to convey the land under the water, though it was an error in the surveyor to treat the tract covered by water as a lake to be meandered, instead of land to be surveyed. Conceding the patent to that extent to be void, it can be avoided only by the United States in a suit to which the patentee is a party. The land passed, and a private individual cannot complain."

The following decisions of the Supreme Court of the United States announce in effect the same principle: *Michigan Land &*

*Lumber Co.* v. *Rust,* 168 U. S. 599; *Humbird* v. *Avery,* 195 U. S. 480; *Oregon* v. *Hitchcock,* 202 U. S. 60.

The decisions of this court in *Smith* v. *Hollis,* 46 Ark. 17, and *Williamson* v. *Baugh,* 71 Ark. 491, are based upon the same principle. The court in these cases held that the decision of the Secretary of the Interior in determining whether or not certain lands came within the terms of the Swamp Land Grant was, in the absence of fraud, conclusive, and could not be overturned in a collateral proceeding.

The legal effect of the patents to the State of the fractional sections and parts of sections surrounding the meandered lines of the lake, according to the official plats of the public survey, was to convey all riparian rights, and by virtue thereof to vest *prima facie* title to the bed of the lake, as shown on the plats, from meander shore lines to center. The conveyances executed by the State in turn to its grantees had the same effect. *Hardin* v. *Jordan,* 140 U. S. 371; *Mitchell* v. *Smale,* 140 U. S. 406.

If title to the lands in controversy has not passed out of the United States to the State and its grantees in that way, it has never passed at all. Though the Swamp Land Act has been held to be a grant *in praesenti,* the legal title did not pass until the lands were duly selected as such, and the patents were delivered. *Rogers Locomotive Machine Works* v. *American Emigrant Co.,* 164 U. S. 559; *Michigan Land & Lumber Co.* v. *Rust,* 168 U. S. 589; *Brown* v. *Hitchcock,* 173 U. S. 473; *Ogden* v. *Buckley,* 116 Iowa, 352; *Funston* v. *Metcalf,* 40 Miss. 504.

These lands have never been selected or patented at all, unless the patents to the adjoining fractional sections embraced them.

The State of Arkansas, by the compromise settlement contract entered into with the United States, which was approved by act of the General Assembly of Arkansas, March 10, 1897, and by act of Congress, April 29, 1898, expressly relinquished her claim to any unpatented swamp land.

So the title to these lands is either in the owners of the adjoining lands by virtue of their riparian rights, according to the legal purport of the patents and subsequent conveyances, or it remains in the United States government. Until the government elects to correct the mistakes in the original survey and assert

claim to the lands, no one can complain or dispute the title of the holders of the *prima facie* title. *Schlosser* v. *Cruikshank*, 96 Iowa, 414; *Ogden* v. *Buckley*, 116 Iowa, 352; *Minnesota Land & Investment Co.* v. *Davis*, 40 Minn. 455; *Lamphrey* v. *Mead*, 54 Minn. 290; *Whittaker* v. *McBride*, 197 U. S. 510.

Appellant in no event has any shadow of title, for, if the State took title as riparian owner under the patent to the adjoining land, she in like manner conveyed it to her grantees, and had no title to donate to the Levee Board. *Towell* v. *Etter*, 69 Ark. 34; *Jeffries* v. *East Omaha Land Co.*, 134 U. S. 178, 10 Sup. Ct. 518.

Whether or. not the State can now correct any mistake as to the quantity of land conveyed by her patent to individuals is not presented in this case, and we therefore refrain from any discussion on that point.

The case of *Chapman & Dewey Land Co.* v. *Bigelow*, 77 Ark. 338, has no application to the facts of the present case, and is not controlling. In that case the meander line was run by the government surveyors along the bank of a stream, and title was claimed under a patent of lands bordering on this meandered line by virtue of riparian rights to lands lying beyond the body of water meandered. This court refused to sustain the claim, holding that no title passed under the patent to lands lying beyond the meandered stream. Neither do *Horn* v. *Smith*, 159 U. S. 40, *Niles* v. *Cedar Point Club*, 175 U. S. 300, nor *French-Glenn Live Stock Co.* v. *Springer*, 185 U. S. 47, have any bearing on the present case. They are cited in the Bigelow case, and the facts of each bring them all within the same class of cases, but they have no controlling force here, because of the difference in the facts.

We conclude that the decree of the chancellor is correct, and the same is in all things affirmed.

### ON REHEARING.

Opinion delivered November 9, 1908.

McCULLOCH, J. The decision is vigorously assailed on the ground that we were mistaken in holding that the unsurveyed land between the meandered line and true shore line of this lake

was not patented by the United States to the State of Arkansas. Courts take cognizance judicially of the general system of government surveys, and accordingly we know that lands are surveyed and platted into sections and parts of sections and into fractionals where they abut on streams or other bodies of water. The record in this case contains a plat and the field notes of the governmental surveys of the land surrounding Walker's Lake, and they confirm the facts of which we are already judicially cognizant. *Bittle* v. *Stuart,* 34 Ark. 224; 7 Enc. Ev. pp. 987, 988; *Webb* v. *Mullins,* 78 Ala. 111; *Ledbetter* v. *Borland,* 128 Ala. 418; *Peck* v. *Sims,* 120 Ind. 345; *Muse* v. *Richards,* 70 Miss. 581; *Standford* v. *Bailey* (Ga.) 50 S. E. 161.

Description of lands, according to terminology employed in the system of governmental surveys and plats of lands, is necessarily a reference to the plats of those surveys; for those terms are meaningless unless so considered with reference to the surveys and plats. There is nothing known of townships, sections and part of sections of lands except such as are described in the plats of the government surveys. Therefore, giving the word "township," used in the stipulation of facts, the meaning which we must attribute to the parties who employed the term, it has reference to the townships surveyed and platted by the government surveyors, and means the townships according to the surveys and plats. A conveyance of the township "according to plat of the surveys" does not include lands which do not appear on the plat of the surveys. We do not mean to hold that the unsurveyed land could not have been selected as swamp lands and patented to the State by the use of proper descriptive terms in the patent; but this was not accomplished by reference to townships, sections or parts thereof according to the plat of the surveys, when the unsurveyed land did not appear on the plats at all. The plats showed it to be water and not land.

We are convinced, also, that, even if we discard the technical meaning of the word "township," the language of the stipulation is susceptible of no other reasonable construction than that only the surveyed land appearing on the plat of the public survey was meant to be covered by the agreement. It is evident that the parties meant only the surveyed lands appearing on the plat, leaving all questions as to the character of the unsurveyed terri-

tory and title thereto open to further proof and adjudication. We find nothing to indicate that appellees' counsel meant to concede that, if the *locus in quo* should be found to have been land and and not lake-bed at the time of the survey in 1847, it was included in the patents from the United States to the State of Arkansas and belonged to appellant. In this respect the stipulation deals only with the surveyed land. It reads that "all of the surveyed lands in the vicinity and locality  *  *  *  were, in September, 1850, swamp and overflowed lands and passed to the State of Arkansas under the grant of the United States of date September 28, 1850, and that the townships including Walker's Lake, as meandered on the map, were included by the Secretary of the Interior of the United States government in the list of lands prepared by him and forwarded by him to the Governor of Arkansas, showing the lands which passed to the State under the grant of 1850, and that said lands embraced in said list were subsequently covered by patents fom the government of the United States."

Now, as it was only stipulated that the surveyed lands passed to the State as swamp and overflowed lands under the act of Congress, it would be unreasonable, in the absence of a clear expression, to construe the meaning of the stipulation to be that the unsurveyed lands were patented by the United States to the State.

We therefore think that we were correct in saying that "the legal effect of the patents to the State of the fractional sections and parts of sections surrounding the meandered lines of the lake, according to the official plats of the public survey, was to convey all riparian rights and by virtue thereof to vest *prima facie* title to the bed of the lake, as shown on the plats, from meandered shore line to center," and that "if title to the lands in controversy has not passed out of the United States to the State and its grantees in that way, it has never passed at all."

We have not been unmindful of the earnest reliance of counsel upon the case of *Kean* v. *Calumet Canal & Improvement Co.,* 190 U. S. 452, but we do not think that the case supports their contention. On the contrary, we think that the views already expressed are in conformity with the conclusions reached in that case. The facts there were that the land in controversy at the time of the survey made by the Government, as well as at the time of the issuance of the patent to the State, was the bed of a

non-navigable lake duly meandered by the survey and situated within the bounds of the section of land patented. The court held that the title to the bed of the lake passed to the State under the patent, and in turn to the State's grantee under its patent, basing that conclusion upon the decisions in *Hardin* v. *Jordan,* 140 U. S. 371, and *Mitchell* v. *Smale,* 140 U. S. 406. It is apparent, therefore, that the court based its conclusion as to the passage of title under the patent upon the fact that the title passed as a riparian right or as an appurtenant to the surveyed land which was conveyed. This is apparent when we consider the language used by the court in the two former cases.

In *Hardin* v. *Jordan, supra,* Mr. Justice Bradley, speaking for the court, said: "It has never been held that the lands under water, in front of such grants, are reserved to the United States, or that they can be afterwards granted out to other persons, to the injury of the original grantees. The attempt to make such grants is calculated to render titles uncertain, and to derogate from the value of natural boundaries, like streams and bodies of waters."

In *Mitchell* v. *Smale, supra,* the same learned justice, speaking for the court, said: "Our general views with regard to the effect of patents granted for lands around the margin of a non-navigable lake, and shown by the plat referred to therein to bind on the lake, were expressed in the preceding case of *Hardin* v. *Jordan,* and need not be repeated here. We think it a great hardship, and one not to be endured, for the government officers to make new surveys and grants of the beds of such lakes after selling and granting the lands bordering thereon, or represented so to be. It is nothing more nor less than taking from the first grantee a most valuable, and often the most valuable part of his grant."

It therefore appears from the above quotations that the court held that the title to the bed of the lake passed because of the riparian or appurtenant rights, for it was not surveyed out as land, and was not described on the plat as land. In other words, it was conveyed as lake-bed and not as land. And so it is in the present case. If the title to the unsurveyed land in controversy passed at all from the general government to the State under the patents, it passed by virtue of riparian rights, for it was

designated on the plats as water, not land; and if the title did pass in that way, the State's title in like manner passed to its vendees.

Counsel for the Board of Directors of St. Francis Levee District has filed a brief, as *amicus curiae,* calling attention to the fact that the rights of the district in unsurveyed lands claimed to have been donated by the act of 1893 (Acts 1893, p. 172) should not be prejudiced by a decision that the compromise between the State and United States affected its right to lands donated prior to the compromise. The district not being a party in the case, its rights cannot be adjudicated herein. The compromise is referred to in the opinion merely to call attention to the fact that the State has thereby released her claim to all unpatented swamp lands, and can not now make selections of swamp land and call for patents for the purpose of correcting mistakes in surveys. If the State did not obtain title under the patents, it is now too late for her to procure title.

Appellant claims title as vendee of the levee district, but, conceding (though not deciding) that the donation act of 1893 could be operative as a grant of the State's equitable claim or title to unpatented swamp lands, and that the State could not thereafter release the claim to the general government, yet the right is not conferred upon appellee to question the accuracy of the original survey, and disturb the *prima facie* title of a prior patentee of the adjoining land.

It may be that the donation act of 1893 conveyed to the levee district the State's equitable title under the Swamp Land Grant of 1850 to unsurveyed lands situated, for instance, like those in the case of *Chapman & Dewey Land Co.* v. *Bigelow, supra,* the *prima facie* title to which had not been created by patent, and that the State could not, subsequent to the donation to the levee district, release the claim to the general government. But we are not required, by the facts of this case, to decide that question.

After a very careful re-examination of the case, bearing in mind the importance and magnitude of the questions and interests involved, we are of the opinion that we reached the correct conclusion on the former hearing. The petition for reconsideration is therefore denied.