DuPriest *v.* Anthony.

5-1029                                          294 S. W. 2d 769

Opinion delivered November 5, 1956.

*Keith, Clegg & Eckert,* for appellant.

*Walter L. Brown* and *Robt. C. Compton,* for appellee.

Ed. F. McFaddin, Associate Justice. This is a boundary line dispute, and the only point urged by the ap-

pellants is that the finding of the Chancery Court is against the preponderance of the evidence.

Section 1, Township 16 South, Range 16 West in Union County, Arkansas, is an irregular-size section. A standard section is 80 chains — or 5,280 feet — on each side. According to the Government plat, the Section 1 here involved is 92.81 chains on the West side, 79.35 chains on the South side, 91.40 chains on the East side and 78.45 chains on the North side. We reproduce a copy of the Government survey of said Section 1:

SECTION I TOWNSHIP 16 SOUTH RANGE 16 WEST

It will be noticed that in the South part of the section there are two approximately regular-size *quarter-sections,* but the North part of the said Section 1 was

surveyed into seven *lots* numbered as shown on the plat. The appellees had an oil and gas lease on Lot 5, and drilled a commercially producing well at a location that they admittedly thought was on Lot 5 and located 16.6 feet East of the West line of Lot 5. But appellants contend that in fact the well is located on Lot 4: so the dispute is as to the boundary line between Lots 4 and 5.

A number of surveyors testified. All admitted that the Northwest corner of said Section 1 is definitely established. The appellees' three surveyors began at the said Northwest corner of Section 1, and, by using the distances shown in the Government survey, located the well in Lot 5. Appellants concede that if the Government survey is correct, then the well is actually located in Lot 5 and the appellees should prevail.

But appellants' surveyors insist: that the Government survey of Section 1 is erroneous; that the East line of Section 1 is actually located 84 feet East of the East line as shown on the Government survey; that when the East line of Section 1 is established as they (appellants' surveyors) contend, then there is an overage of 84 feet (as between the Government survey and the appellants' survey) in the East-West size of Section 1; that under the existing Standard Surveyors' Rules[1], the overage is apportioned between the various tracts; that the result of such apportionment would be to move the dividing line between Lots 4 and 5 a distance of approximately 42 feet to the East[2]; and that this moving of the dividing line would put appellees' well in Lot 4 instead of Lot 5, since, according to the Government survey, the well is only 16.6 feet East of the line.

---

[1] Appellants cite us to the Manual of Surveying Instructions of 1947, issued by the U. S. Department of Interior, and say that on page 362 of the Manual the following appears: "Existing original corners cannot be disturbed. Consequently discrepancies between the new and those of the record measurement will not in any manner affect the measurements beyond the identified corners. But the differences will be distributed proportionately within the several intervals along the line between the corners."

[2] In *Luther* v. *Walker*, 175 Ark. 846 (styled *Luther* v. *Denny* in 1 S. W. 2d 6), we discussed in considerable detail the method of apportionment regarding overage and underage in surveys. See also 11 C. J. S. 739.

Thus it is apparent that the basic questions are: (a) whether the appellants proved the Government survey to be wrong; and, if so, (b) whether the error is enough to move the dividing line between Lots 4 and 5 far enough to the East to put the appellees' well in Lot 4. Other questions were presented in the pleadings in the Trial Court[3], but are unnecessary to consider here because the Trial Court held that the appellants' proof was not sufficient to establish that the Government survey was erroneous; and we conclude that the Chancery decree should be affirmed because appellants have not established in this Court that the findings of the Chancery Court are against the preponderance of the evidence.

The correctness of the Northwest corner of Section 1 was admitted, and the appellants' witnesses gave their version of the location of the East line of Section 1. The Government survey shows the Northeast corner of Section 1 to be 5177.7 feet East of the *Northwest* corner; but appellants contend that the Northeast corner is 5261.7 feet East of the *Northwest* corner. Thus appellants move the East line of Section 1 a distance of 84 feet and say the Government survey is erroneous. To make their case, the appellants used the testimony of three surveyors:

(a) Mr. Goodwin testified that he began his survey at an iron pipe which he understood to be located at the Southeast corner of *Lot 6*. He says that he was told by Mr. McDonald and Mr. Nutt that this iron pipe was on the East line of Section 1. Mr. McDonald was not called to verify the statement, but Mr. Nutt (appellees' surveyor) completely denied making such a statement. So Mr. Goodwin's testimony primarily depends on whether the iron pipe was actually on the East line of Section 1. Mr. Goodwin admitted that he found no monument on the ground to place the section line where he did except the said iron pipe. He said he had been advised by other surveyors that the iron pipe was on the East line; and he

---

[3] These related to appellees' plea of laches against appellants, and appellees' right of removal of machinery and recovery of the amount of benefits the appellants would enjoy from appellees' efforts.

stated that such location tied in with other surveys. Mr. Goodwin was a candid witness and attempted to tie his survey into adjoining sections. Still, it must be recognized that unless the iron pipe from which he started was actually located on the East line of Section 1, instead of 84 feet East of such line, then his testimony does not disprove the Government survey.

(b) Mr. Williams, another surveyor, testified that he checked Mr. Goodwin's survey and found it to be correct; but Mr. Williams' testimony is no stronger than Mr. Goodwin's because it likewise depends on whether the iron pipe used as the starting point, is actually on the East line of Section 1 or is located 84 feet East of the East line of Section 1.

(c) Mr. Methvin, another surveyor, likewise used the iron pipe at the Southeast corner of Lot 6 as a starting point. He said that Mr. McDonald and Mr. Nutt told him that the pipe was on the East line of Section 1. As aforesaid, Mr. McDonald was not called to verify the statement, and Mr. Nutt completely denied making the statement. No surveyor made any reference to the original field notes in the State Land Office. These show: (a) an actual survey — with references to ground monuments — made in 1837 in regard to the East boundary line of Section 1; and (b) a like survey, with like references, made in 1839 in regard to the South boundary line of Section 1. The plat herein copied was prepared from such field notes; and if the field notes had been used by either set of surveyors to check against the ground monuments, then the testimony of the surveyors would have been more valuable.

It would serve no useful purpose to quote at length and in detail from the testimony of the appellants' surveyors. We are convinced that they are all honest men. But the point is that the Government survey is *prima facie* correct. (See *Little* v. *Williams*, 88 Ark. 37, 113 S. W. 340, affirmed by the U. S. Supreme Court, 231 U. S. 335, 58 L. Ed. 256, 34 S. Ct. 68.) The burden was on the appellants to disprove the Government survey. The Chancery Court, after having heard the testimony of

the appellants' surveyors and that of the three surveyors of the appellees, reached the conclusion that the testimony of appellants' surveyors was not sufficient to establish that the Government survey was in fact wrong; and on appeal we cannot say that the finding of the Chancery Court is against the preponderance of the evidence.

Affirmed.