ALLIE CARROLL v. FRED REED

5-6187                                        491 S.W. 2d 58

Opinion delivered March 5, 1973

*Gaughan, Laney, Barnes, Roberts & Harrell,* for appellant.

*Holmes & Holmes,* for appellee.

FRANK HOLT, Justice. The only issue on this appeal is the true boundary line between two adjoining landowners. The litigation resulted when appellant constructed a wire fence along a line which she contends is the northern boundary of her lands. The appellee brought this action to require the removal of the fence and to establish the true boundary line. The area in dispute is approximately 25′ x 660′ or 1/3 of an acre of mostly woodlands. The chancellor specifically found that the testimony of appellee's surveyor was in irreconcilable conflict with the appellant's surveyor, primarily as a result of the method of the survey and the beginning point utilized by each surveyor. In resolving the conflicting evidence, he found that appellee's survey was correct since it was shown that a well established section corner existed which "should be the starting point to determine the dividing line between the parties. . ." For reversal the appellant contends that "the chancellor's decree establishing a boundary line based on Porter Coats' survey from corner markers on the section 10 corners is against the preponderance of the evidence." We cannot agree.

Appellant acquired her property approximately six years before this controversy arose. Shortly after acquisition, appellant had the property surveyed by a Mr. Leister whose starting point was from the southeast to the southwest corner of section 10. The survey was conducted in the presence of appellant, her husband, appellee and two other admoining landowners. In appellee's presence, a creosote post was set at her surveyor's direction as being on and at the east end of the true dividing line. About two years before the trial of this case, she employed another surveyor, Porter Coats, to resurvey the property. He had 35 years survey experience in the county, including 25 as the official county surveyor. It appears that about two years later a barb wire fence was nailed to trees along a

zigzagging or erratic line which appellee's husband himself established. The fence, which appears to be about 60' north of the Leister-Coats dividing line, constitutes the alleged encroachment. Neither Leister nor appellant's husband was called as a witness.

The appellee relied upon Coats, the appellant's surveyor, as his witness. Coats testified that when he conducted his survey for appellant his starting point was a well established southeast section 10 corner which consisted of a damaged concrete brass capped monument. He then "shot a line" to the southwest corner of section 9 and then established the southwest corner of section 10, where he found it marked with steel pins or markers. Leister had also used the same starting point. Appellant's and appellee's property is within this section. There was some testimony by local property owners in section 10 which corroborated Coats to the effect that the southeast and southwest section 10 corners existed as indicated by Coats. Coats testified that the southeast section 10 corner had existed since he had been surveying in that area, "for a number of years," and was considered a reference point. The true dividing line established by the Coats survey was approximately identical with Leister's.

Immediately preceding the trial date, appellant had another survey made by a Mr. Turner, a registered surveyor. He established the southeast and southwest corners of section 10 by running a straight line between the southeast corner of section 11 and the southwest corner of section 9. According to his survey, the northern boundary of appellant's property would be approximately 25' farther to the north than the boundary line reflected by Coats. It appears undisputed that the section corners in section 9 and section 11 are well established by undamaged concrete brass cap monuments of long existence. In fact, it seems that Coats himself and others had used them as reference points in previous surveys in that area. Appellant adduced evidence that certain "'occupation lines" verify her surveyor. However, it appears there are no "occupation lines" on the south side of section 10 other than the highway right-of-way.

In the circumstances we cannot say that the chancellor's finding and acceptance of the Coats' survey as

being correct with reference to the true boundary line, based upon the section 10 corner markers, are against the preponderance of the evidence.

The appellant next contends that the chancellor's decree is contrary to the law. Appellant and appellee both agree that the original United States Government survey is prima facie correct and surveys must conform as nearly as possible with the original government survey. *Buffalo Zinc & Copper Co.* v. *McCarty*, 125 Ark. 582, 189 S.W. 355 (1916), *Burton* v. *City of Fort Smith*, 214 Ark. 516, 216 S.W. 2d 884 (1949), and *DuPriest* v. *Anthony*, 226 Ark. 894, 294 S.W. 2d 769 (1956). Appellant introduced as an exhibit a plat of the United States Government survey (1841) which reflects the section lines to be straight. Appellant says her survey is, therefore, correct since appellee's survey would require an offset at a point which should be the common corner of section 9 and 10. Suffice it to say that neither of the surveyors testified that they made their survey from government established corners.

Affirmed.