John PRICE et al *v.* Jane MAUCH

CA 80-456                                        616 S.W. 2d 738

Court of Appeals of Arkansas
Opinion delivered May 20, 1981

[Supplemental opinion on denial of rehearing
June 24, 1981.]

*Bullock, Hardin & McCormick*, for appellants.

*Young & Finley*, for appellee.

TOM GLAZE, Judge. This appeal involves a boundary dispute between the appellants and appellee who live in separate but adjoining additions in Russellville, Arkansas, *viz.*, East Shores Estates and Yendrek. At the trial of this case, appellants and the appellee presented expert testimony in an attempt to establish their respective claims to the property in question. Appellants relied on testimony given by C. R. Warndof, the engineer who surveyed and platted the two described adjoining additions. The appellee presented evidence to substantiate her claim through Danny Hale, an engineer who surveyed the subject property on several occasions as well as surrounding property located in both platted additions. For the sake of clarity and discussion, the survey map prepared by Hale and introduced at trial by appellee is reproduced as follows:

In viewing the Hale survey map, appellee owns Lot 9 in East Shores Estates and appellant Charles Cauthon owns Lot 8 in East Shores Estates. Appellants Cordia Wilkinson and John and Nina Price own Lots 6 and 7 respectively in the Yendrek Addition. The boundary dispute between these parties arose when appellee claimed ownership to a narrow, triangular strip of land which lies adjacent to and some feet south of the appellee's and the Cauthon's platted lots. The survey map shows this strip, commencing at the southwest corner of appellee's Lot 9 and runs south to the fence (designated with X's), then runs easterly along the fence five hundred fifty feet, then north to the south line of Lot 8 of East Shores Estates, and then westerly along the south lot line of Lots 8 and 9 of East Shores Estates to the point of beginning.

Appellee contends that this described strip of land was never platted and was deeded to her by the developer of East Shores Estates. Appellants, on the other hand, contend that the Hale map is in error and varies from the certified plat survey prepared by Warndof, which they argue should control the boundary dispute. There are two major differences between Hale's survey map and the original plat filed by Warndof: (1) Hale shows the East Shores Estates south boundary lot lines to be some feet north of an old fence, while Warndof's plat depicts the south boundary of East Shores Estates to be the same as the fence line; (2) Hale's map reflects the fence to be six feet south of the East Shores Estates platted line at the point where the line touches the cul-de-sac portion of Shore Drive, a street located in East Shores Estates but which was used as a means of ingress and egress by the appellants who live in the Yendrek Addition. Warndof's plat places both the East Shores Estates platted line *and* the fence tangent to the cul-de-sac. The Warndof plat reflects the fence as the common plat line for the south boundary of East Shores Estates and the north boundary of the Yendrek Addition. In this event, the appellants would have continued access to their lots in the Yendrek Addition by Shore Drive where this street directly meets the respective additions' platted boundary lines. However, if the Hale survey is correct and controlling, the fence and the Yendrek north boundary line is at least six feet south of the cul-de-sac, and

this same area where the cul-de-sac touches the south plat line of East Shores Estates is also included within the strip of land to which appellee claims ownership. Thus, the appellants would have no legal right to cross this strip of property to gain access to their lots.

After reviewing the surveys, plats, photos and testimony of Warndof and Hale, we cannot say that the chancellor's finding was clearly erroneous in recognizing appellee's claim to the strip of land in dispute. Testifying relative to his original plat of East Shores Estates, Warndof stated that he marked the corners of appellee's Lot 9 and recalled placing the corner at the fence line. Hale testified that he had surveyed Lot 9 a few months prior to trial, and he found the iron fence post set by Warndof marking the lot's corner, and Hale stated the corner of the lot is located six feet north of the fence. Hale further testified that, in checking his survey, he found the dimensions and distances of Lot 9 came out to the described corner iron fence post which had been set by Warndof.

It is a well settled rule of surveying, recognized by the courts, that the lines actually run control over maps, plats or field notes. The actual survey originally made is evidenced by the fixed boundaries then established, and the actual survey must, therefore, govern over the erroneous plat thereof. *Pyburn* v. *Campbell*, 158 Ark. 321, 325, 250 S.W. 15 (1923). There were two surveyors who offered conflicting testimony below, and we cannot say that the chancellor's acceptance of Hale's survey as being correct with reference to the true boundary line is against the preponderance of the evidence. See *Carroll* v. *Reed*, 253 Ark. 1152, 491 S.W. 2d 58 (1973).

Appellants argue next that the strip of land claimed by appellee was never originally platted, and therefore, this land inures to the benefit of the public. In other words, appellants contend that the strip of property in question, including the six feet over which they must travel to gain access to their property from the cul-de-sac, was intended for public use since it was not platted. In support of this proposition, appellants cite *Davies* v. *Epstein*, 77 Ark. 221,

92 S.W. 19 (1905) and *Arkansas State Highway Commission* v. *Sherry*, 238 Ark. 127, 381 S.W. 2d 448 (1964). The court in each of these cases relied on the rule of law that:

> An owner of land, by laying out a town upon it, platting it into blocks and lots, intersected by streets and alleys, and selling lots by reference to the plat, dedicates the streets and alleys to the public use, and such dedication is irrevocable.

The *Sherry* court additionally adopted the legal principle that:

> ... where an owner of a subdivision of land records a map thereof without reservation, he thereby offers to dedicate streets and roads shown thereon to public use, even though there is no express declaration of dedication in the plat.

In any case where the original plat does not clearly plat and dedicate certain property for public use, the underlying question to decide is whether the owner (developer) intended to dedicate the land in controversy. The intention to which courts give heed is not an intention hidden in the mind of the landowner, but an intention manifested by his acts. *Davies* v. *Epstein, supra.*

Unlike the instant case, the lands in controversy in both *Sherry* and *Davies* abutted a dedicated public street or highway, and in *Davies* the land additionally was bordered on the opposite side by a navigable lake. In *Sherry*, the court held the disputed land was specifically and clearly dedicated on the plat as part of a fifty foot right-of-way for a U.S. Highway even though the owners of the property testified that they had not intended to do so. In *Davies*, as is true in the facts before us, the plat did not specifically dedicate the land in controversy. The *Davies* court decided the owner intended to dedicate the land to public use because it was inconceivable that the owner intended to lay out a town on the banks of navigable water, parallel to the bank with a street and at the same time entirely cut it off from access by the public. In so holding, the court relied on the legal presumption that a

grant or dedication was intended to enable the public to get to the water for the better enjoyment of the public right of navigation. *Davies* v. *Epstein, supra*, at page 225.

In the case at bar, the facts just do not support a dedication for public use. Contrary to appellants' contention, the land in dispute, as determined by the chancellor and affirmed by us, does not abut a street or the cul-de-sac portion of Shore Drive. As discussed earlier, the strip of land is bordered on the south by a fence and on the north by the south boundary of East Shores Estates. There is nothing in the original plat or the testimony of either surveyor that a public ingress or egress was to be constructed leading from East Shores Estates Addition into the Yendrek Addition. In fact, if one views the entire length of this extremely narrow strip of property, it is difficult to perceive of any intended public use to which this property could be put. We certainly agree with the chancellor that there is substantial evidence and reason to support a finding that the owner did not intend to dedicate the subject property.

In conclusion, we do wish to modify the chancellor's decision in one respect. The chancellor decreed that appellee's ownership not only extended from Lot 9 to the south boundary (fence) of the unplatted property discussed previously, but also the court held appellee is the owner of *all* other lands lying between the platted East Shores Estates and the quarter line, *i.e.*, from Lot 9 to the quarter line. The record clearly shows that the property south of the fence *was platted* as part of the Yendrek property. Any deed which appellee received from the owner was subject to the platted property in East Shores Estates and Yendrek. There is no evidence that we can find in the record which would support any claim appellee might assert to this additional land awarded appellee by the chancellor.

We, therefore, remand this cause to the trial court with directions to enter a decree consistent with this opinion, reducing accordingly the amount of land awarded appellee.

Affirmed in part and reversed and remanded in part.

Supplemental Opinion on Denial of
Petition for Rehearing
June 24, 1981

BOUNDARIES — BOUNDARY BY ACQUIESCENCE. — In the instant case,
there is no doubt that appellants, appellee and their predeces-
sors in title recognized the fence as the dividing line between
the East Shores Estates and Yendrek additions, and the law is
well settled that when adjoining landowners silently ac-
quiesce for many years in the location of a fence as the visible
evidence of the division line and thus apparently consent to
that line, the fence line becomes the boundary by acquie-
scence.

Petition denied.

TOM GLAZE, Judge. We decided this boundary property
dispute in *Price* v. *Mauch*, 1 Ark. App. 348, 616 S.W. 2d 738
(1981), and affirmed in part the trial court's decision, but
reversed and remanded to modify the decree to show appellee
owns the property in dispute to the fence but not to the
quarter line. On June 5, 1981, appellee filed a petition for
rehearing, contending appellee held legal title to the quarter
line and that the Yendrek property could only be platted to
the quarter line but not north of it. Neither appellee nor
appellants cite any legal authority relative to this issue.

In denying appellee's petition, we take this opportunity
to briefly mention certain factors we previously considered
but omitted from our written opinion. As we noted in *Price*
v. *Mauch, supra*, Warndof platted both additions, Yendrek
in 1968 and East Shores Estates in 1969. Warndof repeatedly
testified that the fence was considered to be the boundary
line between East Shores Estates and Yendrek, and this is
exactly the way he depicted it on the plat.[1] Appellee's
predecessor in title, James K. Young, was the person who
engaged Warndof to plat East Shores Estates, and Young
never objected to the plat when it was prepared and filed.
Appellee, in a letter introduced into evidence without

---

[1] We previously held that Warndof's actual survey established the
south line of appellee's Lot 9 and the cul-de-sac are six (6) feet north of the
fence.

objection, stated that the "old fence line was the property line and it should not be destroyed." Additionally, two other witnesses, grandchildren of the developer of Yendrek, testified that the purpose of the fence between Yendrek and East Shores Estates was intended to be the property line. One witness related the fence had been so considered for twelve years and the other testified it was the boundary line since 1940.

In reviewing the record *de novo*, we have no doubt that the appellants, appellee and their predecessors in title recognized the fence as the dividing line between the East Shores Estates and Yendrek additions. The law is well settled that when adjoining landowners silently acquiesce for many years in the location of a fence as the visible evidence of the division line and thus apparently consent to that line, the fence line becomes the boundary by acquiescence. *Morton* v. *Hall*, 239 Ark. 1094, 396 S.W. 2d 830 (1965), and *Williamson* v. *Rainwater*, 236 Ark. 885, 370 S.W. 2d 443 (1963).

Since we find that the record reflects that the parties and their predecessors acquiesced in the fence being the boundary line, we deny appellee's petition for rehearing.