DODSON ET AL V. MAYOR AND TOWN COUNCIL, FORT SMITH.

1. COUNTY COURTS : *Successors to Board of Supervisors.*
   By the Constitution of 1874 County Courts were made successors and mere continuations of the former Boards of Supervisors of the counties.

:2. SAME: *Appeals from to Circuit Courts.*
   An appeal lies to the Circuit Court from the judgment of the County Court granting or refusing an application to annex territory to a municipal corporation, and the Circuit Court should, on such appeal, retain jurisdiction of the subject matter for final judgment, and try the case *de novo;* but where the County Court has fairly understood the law, considered the facts and exercised its discretion upon a view of the fitness and propriety of the proposed matter as affecting the interest and convenience of the public, its action then should have not the technical, but much of the persuasive force of a political question finally determined.

3. MUNICIPAL CORPORATIONS: *Annexation of Territory to. Construction of Statute.*
   By force of the Statute of 1875, the annexation of contiguous territory to a town, follows the vote of the town and the proper formal steps to be taken in the Couity Court, unless there be a remonstrance filed against it and sustained.
   The vote of the town makes a *prima facie* case for annexation; the onus for showing sufficient cause against it is upon the remonstrants.

APPEAL from *Sebastian* Circuit Court.
Hon. J. H. ROGERS, Circuit Judge.
*Newton*, and *Duval & Cravens*, for appellants.
*Clendenning*, contra.

EAKIN, J. :

On the 10th of October, 1877, the town of Fort Smith, by its attorney, presented to the Sebastian County Court a petition for annexation to itself, of certain contiguous territory, described as follows : "The N. W. 1-4 of section 16, and all "of section 17 lying in the State of Arkansas; and all of sec-. "tion 8 lying in the State of Arkansas, not included in the "present limits of Fort Smith, except that part of section 8 "known as DuVal's new addition, and that portion known as. "DuVal's field; all in T. 8 N. of R. 32 west, situated in "Sebastian county." The petition showed that the matter had been duly submitted to the qualified electors of the town as prescribed by law; and that, at an election held on the 31st. day of August, 1877, a majority of the votes had been cast for said annexation. A map, or plat, of the territory proposed for annexation, accompanied the petition; which was duly set for hearing on the 14th day of January, 1878.

On that day a remonstrance against the said annexation, was. filed, with the signatures of 106 persons, describing themselves as inhabitants and real estate owners within said contig-. uous territory. They declare their opposition to annexation,, and state that they had not been consulted in the matter, and that they believe it would be unjust.

Next day the County Court, upon hearing the petition,, remonstrance, evidence and argument of counsel, held : That as it appeared that the remonstrants constituted a majority of the freeholders and property owners, residing on said territory sought to be annexed, the petition ought not to be granted. It

was therefore rejected, and the town appealed to the Circuit Court. The matter was there heard *de novo*, after a refusal to dismiss for want of jurisdiction.

The evidence adduced on trial showed that a part of the N. W. 1-4 of said section 16 had been laid off into blocks and lots. That is to say: There were in said section 683 1-2 lots, of which 513 1-2 had been sold; that there were. 16 1-2 blocks entirely unsold and unnamed; that part of these blocks were in the woods, and other parts consisted of low, swampy lands; that the remonstrance was signed by a majority of the occupants and owners of the lots on this quarter section; that on said 17th section, embraced in the map, there was one field of about forty acres, and another of ten acres; that the Birnie estate owned about 13 1-2 acres; that a part of said section was laid of in lots, ranging from a half acre to two acres, making a total of 80 acres in the State; that the largest portion of said section, to-wit, 300 acres, constituted what is known as the Government reserve, containing the old fort, national cemetery, and other buildings belonging to the United States, and occupied in part by the Federal District Court and its officers. A majority of the occupants and owners on this section also signed the remonstrance. The territory sought to be annexed lies all in the same county with and contiguous to the town of Fort Smith. This was all the evidence.

Upon the hearing the court held that there had been a full compliance with all that the statute required, in order to authorize the annexation; and that it was right and proper that the petition therefor should be granted. It was accordingly ordered that the remonstrance be dismissed, the prayer to the petition be granted, and that the said territory included therein be deemed and taken to be included in, and constitute a part of said town. The County Court was further directed to take proper legal steps for such annexation, in conformity

NOVEMBER TERM, 1878.        511

Dodson et al vs. Mayor and Town Council, Fort Smith.

with the judgment. The remonstrants excepted and moved for a new trial on the grounds that the Circuit Court had no juris- diction of the matter ; that the rejection of the petition by the County Court was final and conclusive ; and that the finding and judgment of the court was contrary to law and evidence ; The motion was overruled, and thereupon the remonstrants appealed and gave bond for supersedeas.

By the Constitution of 1874, (*schedule, sec.* 23,) the Coun- ty Courts were made successors and mere continuations of the former Boards of Supervisors of the counties, and were given exclusive original jurisdiction in all matters necessary to the internal improvement and local concerns of their respective counties (*Art. VII, sec.* 28). All laws then in force, not in conflict with the new Constitution, were continued until amended or repealed (*schedule, sec.* 1). By the laws then in force, (*Gantt's Digest, secs.* 706 *and* 1191) appeals lay in all cases, by persons aggrieved, to the Circuit Courts from the final judgments or orders of the Boards of Supervisors. This applies now to the County Courts, and it is plain that the Circuit Court properly entertained jurisdiction of this appeal, and it was further the duty of the Circuit Court to retain jurisdiction of the subject matter for final judgment, in the same manner and to the same extent as though original juris- diction had been conferred on said Circuit Court by law. (*Gantt's Digest, sec.* 1195.)

The only remaining question is, did the court err upon the law and the evidence. This leads us to a particular notice of the general Act of March 9th, 1875, providing for the incor- poration, organization and government of municipal cor- porations.

Sections 35, 36 and 37, provide for the creation of new corporations to meet the wishes of the inhabitants of localities, not already incorporated. They are required to file a petition

to the County Court, signed by not less than twenty of said inhabitants, with a description and map of the territory, name of the town, and the persons authorized to act for the petitioners in court. A time must then be fixed for hearing said petition, not less than thirty days, of which notice must be given in a mode prescribed by the Act. The hearing must be public, and *any person interested* may appear and contest the granting of the prayer, and affidavits may be used on both sides. If the County Court shall be satisfied, upon hearing the case, that twenty voters reside in the limits described, and have signed the petition, and that the requisites of the law have, in other respects, been complied with; ''and it shall, ''moreover, *be deemed right and proper in the judgment and* ''*discretion of the court*, that said petition shall be granted,'' then they shall make an order that the town may be organized, etc.

Sec. 84, under which these proceedings were had, was framed to meet the case of a corporation already formed, desiring to annex contiguous territory. It provides that the matter shall be first submitted by the town council to the ''*qualified electors*,'' which can only mean electors of the town. If a majority desire it, the corporation shall present a petition for that purpose to the County Court, whereupon ''the like proceeding shall be had on said petition as is prescribed in the 35th, 36th and 37th sections of this Act, so far as the same may be applicable.'' The Act then proceeds, ''and if within ''thirty days after a transcript shall be delivered as provided, ''no notice of a complaint against such annexation shall be ''given, at the end of said thirty days (and in case of any such ''complaint, after the end of thirty days after the dismission ''of said complaint) the territory shall in law be deemed, and ''be taken to be included in, and shall be a part of said cor- ''poration,'' etc. It will thus be seen that the annexation is

to take place, unless a complaint be filed; or if a complaint filed should be dismissed. In the former case, the annexation is effected by operation of the statute, regardless of the action of the court; in the latter the action of the court is presumed to arise on and be directed to the complaint. Inasmuch as the proceedings must, as nearly as possible, *mutatis mutandis,* conform to those prescribed by the 35th, 36th and 37th sections, it follows that the court in dismissing, or refusing to dismiss, any complaint against annexation, should consider and determine whether under the circumstances it be right and proper in the judgment and discretion of the court, that the petition for annexation should be granted.

All these are obviously proceedings of a political nature, having for their object the promotion of the prosperity of the inhabitants of thickly settled localities and their better government. The counties, as political organizations, have an interest in the matter, as well as the State herself. It concerns them, as such, on the one hand that the citizens should have all the aids afforded by local organizations, to increase the numbers of the inhabitants, promote their comfort, facilitate their business and apppreciate the value of real estate, all of which go to the augmentation of the county revenues; and, on the other hand, that no portions of her citizens may, under pretence of the necessity of municipal organizations, withdraw themselves from the general police powers of the counties, with regard to roads, bridges and other matters conceded to these corporations within their limits.

The very nature of the subject matter, as well as the anomalous character of the proceedings, distinguish cases like this from ordinary suits between parties, or claims against counties, in which courts have no discretion, but are subject to rules of law regulating rights. The provisions for organizing towns, etc., are rather ancillary to the governments of the State, and

32

counties, than acts for conferring or protecting private rights. No particular inhabitants have a vested right to come into, or remain in any town organization, or being in to go out; nor has any town a vested right to compel others to come in. This whole matter, with the power of taxing them, is under the sovereign control of the legislative body, subject only to constitutional restrictions. It might have made the creation and enlargement of towns depend upon other formalities than the assent of the County Courts, or might organize them directly, perhaps, but where it has made the assent and judgment of the County Courts necessary, it must be presumed that it was for a wise purpose, and the policy of the act should not, without strong reason, be overlooked or thwarted.

Whilst the court is of opinion that an appeal lay in the case, yet we think it should be distinguished from ordinary suits, or judicial proceedings. The appeal is useful to correct any improper action of the County Court, such as an abuse of discretion, or irregularity of its proceedings, or mistake of law resulting in prejudice to public or private rights. It is evident that the act for hearing all appeals *de novo*, although broad enough to cover cases like this, was not framed with a view to them, but to ordinary suits in the Probate Courts, or claims aginst counties, in the County Courts. It is very doubtful whether the Legislature meant to so interfere with the discretion of the County Court in a political matter, as to put it under the entire control of the Circuit Court, without any showing of abuse or mistake. This should always be a grave matter of consideration, and the Circuit Court, in cases like this, should hesitate to interfere with the judgment and discretion of the County Courts, when fairly exercised, without any fraud or manifest mistake as to the law of the case, upon the facts presented. That is to say: where the County Court has fairly understood the law, considered the facts, and exercised

its discretion upon a view of the fitness and propriety of the proposed matter, as affecting the interests and convenience of the public, its action then should have, not the technical, but much of the persuasive force of a political question finally determined.

This would have been the positive duty of the Circuit Courts, under the old practice, on appeals from the Probate and County Courts, and no trial *de novo* would have been proper unless it had been first ascertained that there had been material error of law or fact.

But the language of Sec. 1195 of the Digest is so direct and comprehensive that we cannot avoid the conclusion that in this case it was not only the duty of the Circuit Judge to hear the matter *de novo*, but in doing so, to exercise the same discretion which the County Court might have done originally. There is no middle ground which, as a matter of law, can be securely taken, which would impose it upon the Circuit Court as a matter of positive duty, to regard the view taken of the matter by the County Judge, any further than as the same may be persuasive.

Having this jurisdiction of the cause, and being clothed with this discretion, did the Circuit Judge err in dismissing the complaint or remonstrance? By force of the statute the annexation follows the vote of the city, and the proper formal steps prescribed to be taken in the County Court, unless there be a complaint filed against it and sustained. The vote of the town makes a *prima facie* case as to the propriety of the annexation. The onus of showing cause against it sufficient to satisfy the judgment of the County Judge, was upon the remonstrants. The only reason they alleged was that it was against their will, and that they had not been consulted.

This was not a valid reason. The power of the Legislature to include, or cause to be included, in such municipal corpora-

tions, any portion of territory, with its inhabitants, and to subject them to taxation for municipal purposes is too well settled for further discussion. The whole matter has been gone over in the case of *Eagle et al* v. *Beard, etc.*, decided at the present term of this court, and this may be done wholly irrespective of the will or consent of the persons incorporated. It is not taking property without compensation, but subjecting it to public burdens for the compensation presumed to result from the benefits of the corporation.

We do not know what affidavits, or other evidence, were presented to the County Court. The petition, as appears from the record, was refused, and the remonstrance sustained, expressly, and only, because it appeared that the remonstrants constituted a majority of the freeholders and property owners residing in said territory sought to be annexed. It does not appear what the judgment of the court would have been upon the facts, or that the court meant to exercise any discretion based upon views of State or county policy. Its decision rested upon a view of the law, obviously erroneous, and which precluded any exercise of discretion. It was never called into action, and the matter passed to the Circuit Court, to be heard as an original cause.

Evidently, the evidence presented to the Circuit Court, with the accompanying map, makes a weak case for the annexation of the outside territory, if the onus of showing the necessity of it had been upon the town. But it is not inconsistent with the evidence to suppose that it was a matter of propriety and public convenience. It is sufficient here to refer to the sentiment of the evidence in the former part of the opinion.

The remonstrants should have shown that the thing proposed ought not to have been done, by facts and circumstances from which the court could judge of its injustice. The proof is all very vague and indefinite. What would be the return and

extent of the burdens imposed upon the proposed territory? What would prevent them from receiving the full benefits of incorporation in as full a degree as other portions of the city? How many inhabitants were there? How many houses and how distributed? These and many other important considerations, are left, in a large degree, to inference and conjecture. That a large portion was open ground, about fifty acres, is a very important fact; and raises a serious doubt as to the propriety of the incorporation, as proposed. Yet it is not conclusive, without further explanation; showing that it was of such a nature or so situated, as not to be really proper for city objects—or that the real object of incorporating it was to acquire the right of taxation without compensatory municipal advantages.

Looking at the whole matter, and considering that the onus was on the remonstrants, we cannot say that the Circuit Judge abused his discretion. The proceedings have been in accordance with law, and if the territory has been improvidently added to the town of Fort Smith, the remedy is in the Legislature alone.

Judgment affirmed.