THOMPSON *v*. DARR.

Opinion delivered July 11, 1927.

1. BOUNDARIES—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—In a suit to enjoin the removal of a boundary fence between plaintiff's and defendant's land, the chancellor's finding and decree fixing the line in accordance with the testimony of one surveyor *held* not against the preponderance of the evidence.

2. BOUNDARIES—FIXED MONUMENTS.—A surveyor cannot change the corners established by the Government survey, as such fixed monuments prevail over both courses and distances under § 2396 of Rev. St. U. S. (U. S. Comp. St. § 4804).

3. BOUNDARIES—ESTABLISHING LOST CORNERS.—The proper method of procedure in locating a lost corner is to start at the nearest known point on one side of the lost corner on the line on which it was originally established; then measure to the nearest known corner on the other side on the same line, and, if the length of the line be in excess of that called for by the original survey, to divide it between the tracts connecting to such known points in proportion to the length of the boundaries of such tracts on such line as given in the survey.

Appeal from Conway Chancery Court; *W. E. Atkinson*, Chancellor; affirmed.

*Edward Gordon*, for appellant.

*Strait & Strait* and *E. A. Williams*, for appellee.

SMITH, J. Appellee Darr owns the southwest quarter of section 34 and the east half of the southeast quarter of section 33, township 7 north, range 17 west, and appellant Thompson owns the adjoining land on the west and the north, and this litigation involves the location of the true boundary line between these coterminous owners.

Appellee had a fence on what he says is the true line, and appellant removed it, and the litigation began as a suit to enjoin that action. Five surveyors testified in the case, two on behalf of appellee and three on behalf of appellant. The court accepted as correct the survey made by E. A. Woolverton, and the decree which awarded appellee the relief prayed was based on the testimony of this witness. Woolverton testified that he had been engaged in surveying for fifty-three years, and that for twenty-six years of that time he was the county surveyor,

although he was not holding that office at the time his deposition was taken. He testified that, in 1886, he had located the essential corners from the Government field-notes, as the bearing trees were then standing, and that he had had occasion to survey the line running north and south between the east half of the southeast quarter of section 33, owned by appellee, and the west half of that quarter section owned by appellant, three times, twice before either of the litigants became owners and once since appellee had purchased the interest he now owns, and that he had twice run the line between sections 33 and 34.

Woolverton testified that, when he surveyed appellee's west line, he commenced at the quarter section corner between section 33, township 7 north, and section 4, township 6 north, range 17 west, and ran due east 20 chains and 20 links, and continued that line to the northeast corner of section 4, township 6 north, range 17 west, and found that it was 20 chains and 20 links to the section corner, and that this was correct, and, when he first made that survey, the bearing trees were at the corner established by the Government survey, and that his subsequent survey made by him coincided with the first survey, and was verified when he found an iron stake which he had previously embedded in the ground.

On his cross-examination Woolverton testified as follows: ''I began at the southwest corner of the Thompson land because I knew that corner to be correct. I then ran east 20 chains and 20 links, and set the southeast corner of the Thompson land and the southwest corner of the Darr land, then I ran north 40 chains and 16 links to the northeast corner of the Thompson land, which is the northwest corner of the Darr land. Now I will state that the Government field-notes only give one mile even on the south line of section 33, but by actual measurement from corner to corner I find that it is one mile and 80 links. I therefore divided that into forty-acre tracts, giving to each forty 20 links on the south boundary of section 33. I did that when I surveyed the

Cook land; Cook owned the land south of 33, and also owned the lands that Darr owns in 34, and in surveying that I surveyed from one corner of section to the other, and the witness trees at the corner were still standing. I found, as I stated, there were 80 links more in measurement than the Government field-notes give it, and that is why I made the division as I did, giving 20 links to each forty. My survey does not vary from the Government field-notes on the south side of section 33; I can explain that, I think, to your satisfaction. The law is, and that is the instructions that we get, too, where we find that our chain measures more than is given in the Government field-notes, we adjust our chain so as to make the measurement they do. Instead of changing my chain, I made the division by my chain as I measured it. We are compelled to accept the corners as established by the Government, and we have to adjust our measure to that. There are 80.8 acres in the east half of the southeast quarter of section 33.''

The fact that the south line of section 33 is one mile and eighty links in length, instead of an exact mile, is one of the facts out of which the differences in the surveys arise.

H. L. Wright, another surveyor, testified that Woolverton's survey was correct.

The surveys by the other three surveyors give appellant the strip of land in controversy, but there are certain differences in these surveys, which we will not set out, which make it very probable that they were not as accurate in the location of the essential corners as Woolverton had been.

Woolverton's testimony makes it clear that, if his survey is not correct, the boundary lines of adjacent lands, which have long been accepted as correct, are erroneous to the same extent that appellant claims the disputed line is in error.

After the depositions of a large number of witnesses had been taken, the cause was submitted to the court in May, which was an adjourned term of the regu-

lar January, 1926, term of the chancery court. The cause was submitted under an agreement that respective counsel might file briefs and a final decree be rendered in vacation settling the boundary line, but reserving the question of damages. A few days after the submission the court advised counsel in the case that he recalled that Woolverton testified that his last survey coincided with the one he had made thirty years previously, and that he had decided to sustain Woolverton's survey. This decision gave the disputed strip of land to appellee.

The court directed counsel to prepare the decree in accordance with this finding, and, if they were unable to agree, to advise him.

The precedent for the decree was not prepared, and, when the regular June, 1926, term of the court convened it appeared that counsel for appellee had prepared a brief on the question of damages, which had been served on the former attorney for appellant but had not been served on the attorney then representing appellant, and the cause was set down for a later date to afford counsel for appellant an opportunity to file a brief on the question of damages, but, when that day arrived, appellee waived the damages, and a final decree was entered on the record in appellee's favor.

At the same term of court appellant filed a petition to vacate the decree and to reopen the case and to hear further testimony, it being alleged that the original decree had been based upon the testimony of Woolverton, and that Woolverton had conceded that his testimony was erroneous, and that the survey giving the disputed strip of land to appellant was correct. Accompanying this petition were the affidavits of S. G. Davies and B. F. Stermer, surveyors, who had originally testified in appellant's behalf, to the effect that Woolverton had admitted the correctness of the surveys made by affiants.

The court announced that the case would not be reopened except for the purpose of determining whether Woolverton had admitted the inaccuracy of his survey, and the petition appears to have been treated as a pro-

ceeding under § 1316, C. & M. Digest, which provides that, when grounds for a new trial are discovered after the term at which the verdict or decree was rendered, application may be made not later than the second term after the discovery to set aside the judgment or decree. It was agreed that the affidavits accompanying the petition should be treated as depositions, and Woolverton was orally examined before the court.

These affidavits were to the effect that, after the final submission of the cause, the affiants, accompanied by Woolverton, re-ran the lines in question, and this survey established the line for which appellant contends, and Woolverton conceded that this survey was correct and his own previous survey incorrect. These affiants recited various circumstances connected with the survey made in Woolverton's presence, some of which Woolverton admitted, while others he denied.

The court refused to permit Woolverton to again testify as to the accuracy of his survey, but did permit him to make the following explanation of his acquiescence in the survey of Stermer, which survey was made in the presence of himself and Davies: "At the time that Thompson was talking to me (about the survey made after the submission of the cause) I thought that Stermer had made the right division. After figuring on it that night I decided that he made the wrong division as to the line between Thompson and Darr, and next morning I went to talk with him, and learned he had gone to the bottoms. I then hunted up Mr. Davies and told him that we had made a mistake that evening before as to the location of the line between Darr and Thompson; that I wanted to go up there and check it over from the nearest known corner and see if we had made a mistake. Mr. Davies claimed we had made no mistake, and he did not care about it, so I hired a man and went there and checked over the line from the same starting point, and I gave Thompson twenty chains and twenty links, as I did in the first survey, and I found that the iron stake that I had put up that time had been moved. I

then called Thompson's man on the farm up there and marked the place where the line should be, at twenty chains and twenty links east of the quarter section corner on the south side of section 33, which Stermer and Davies accepted as the true corner, and I measured east from the twenty chains and twenty links, marked the place, and called Thompson's man down there and showed him where the corner should be.''

Having thus explained his acquiescence in the Stermer survey, Woolverton stated that his rechecking located the corner as he had located it in his previous surveys, and that this established the line as originally testified by him, and that his former testimony was correct.

We think the finding and decree of the court fixing the line in accordance with Woolverton's testimony is not against the preponderance of the evidence, and we are also of the opinion that the court was warranted in refusing to set aside its decree upon the ground that Woolverton conceded that his first testimony was erroneous.

In this connection it may be said that it clearly appears that the line contended for by appellee between the east and west half of the southeast quarter of section 33 has been apparently acquiesced in for many years. Appellee testified that he had an agreement with appellant's predecessor in title as to the line under which he built the fence which appellant tore down on the line which appellee contends is correct.

It was also shown that at one time a German, whose name is not stated, was in possession of the west half of the southeast quarter section 33, and that he had cleared a strip of land along the east side thereof, and Woolverton testified that he made a survey at least twenty years before the trial of the line between the east and west half of this quarter section, and that it appeared from this survey that the German had cleared over the line, and the German accepted this survey as correct, and built a levee on the line as established by Woolverton, which did not extend, however, the entire length of this dividing line.

It may be said also that Woolverton was correct in his apportionment of the excess of the 80 links more than the mile which the Government field-notes showed to be the length of the south line of section 33, the apportionment being the addition of 20 links to the south line of each 40-acre tract bounded by the south line of the section.

The surveyor could not change the corners established by the Government survey, as these fixed monuments prevail over both course and distance. *Meyer* v. *Board of Imp. Pav. Dist. No. 3,* 148 Ark. 623, 231 S. W. 12. Section 2396 of the U. S. Revised Statutes so provides.

The Supreme Court of Wisconsin, in the case of *Levis* v *Prien,* 73 N. W. 654, 98 Wis. 87, said:

"The unvarying rule to be followed in such cases is to start at the nearest known point on one side of the lost corner, on the line on which it was originally established; to then measure to the nearest known corner on the other side, on the same line; then, if the length of the line is in excess of that called for by the original survey, to divide it between the tracts connecting such two known points in proportion to the lengths of the boundaries of such tracts on such line as given in such survey."

Upon a consideration of the whole case the decree appealed from does not appear to be against the preponderance of the evidence, and it is therefore affirmed.