BURTON *v.* CITY OF FORT SMITH.

4-8776                                                216 S. W. 2d 884

Opinion delivered January 31, 1949.

*Grant & Rose,* for appellant.

*Harrell Harper,* for appellee.

MINOR W. MILLWEE, Justice. The City of Fort Smith instituted proceedings under Ark. Stats., (1947), § 19-307 (§ 9501, Pope's Digest) to annex approximately 11 square miles of contiguous territory lying south, east and northeast of the present city limits. After a majority voted in favor of the proposal at the general municipal election held April 1, 1947, the city petitioned the county court to make the order of annexation.

Appellants represent several hundred property owners in the area affected who appeared as remonstrants in the county court. After an extensive hearing the county court found in favor of annexation and granted the petition, as did the circuit court on appeal.

Appellants seek a reversal of the circuit court judgment on two grounds: First, because there was no accurate description of the limits of the territory sought to be annexed set out in the petition, nor accurate map or plat filed therewith as required by statute; and second, because the entire area sought to be annexed was neither needed nor appropriate for city purposes.

While the circuit court, on appeal from the county court, tries a proceeding under the annexation statute *de novo,* we must affirm the judgment of the circuit court if there is any substantial evidence to support it. *City*

*of Newport* v. *Owens,* 213 Ark. 513, 211 S. W. 2d 438, and cases there cited. It is also well settled that a favorable vote in the municipal election makes a *prima facie* case as to the propriety of the annexation, and the burden of showing sufficient cause against it is upon the remonstrants. *Dodson* v. *Fort Smith,* 33 Ark. 508; *Walker* v. *City of Pine Bluff, ante,* p. 127, 214 S. W. 2d 510.

As to the first ground alleged for reversal, § 19-307, *supra,* provides that the procedure on the petition for annexation shall be as prescribed in Arkansas Statutes, (1947), §§ 19-101 to 19-103 (Pope's Digest, §§ 9786-9788), so far as same may be applicable. Section 19-103 provides that the county court shall be satisfied, after hearing the petition, that the limits of the territory sought to be annexed have been accurately described, and an accurate map or plat thereof made and filed. The lengthy description appearing in the petition for annexation was prepared by an abstractor with 23 years' experience. He testified that the description was drafted in accordance with a map which was filed with the petition for annexation. It is undisputed that monuments of sections, townships, and ranges on this map were in accordance with the Government survey of 1827, a copy of which was also introduced in evidence. There was also evidence that the land lines did not run exactly, or true north, south, east and west as shown by either the Government survey or the map made in accordance therewith.

In this connection, the first part of the description set forth in the petition reads: "Beginning at a point on the State line between the states of Arkansas and Oklahoma at the southwest corner of fractional section 20, township 8 north, range 32 west, which said point is also the present line of the limits of the City of Fort Smith, Arkansas; then *south along said State line* to the southwest corner of fractional section 32, township 8 north, range 32 west, which said corner is also the southwest corner of Upper Township of Sebastian County, Arkansas, and the southwest corner of the Fort Smith District of said Sebastian County. . . . ." An engineer testi-

fied that a line run by a surveyor due south from the point of beginning would not reach the southwest corner of fractional section 32, township 8 north, range 32 west, but would reach a point west of said southwest corner and take in 36 acres of land in Oklahoma. From this testimony it is argued that a line cannot run "south" and also "along the State line" and that the description is, therefore, erroneous and inaccurate.

In making this argument we think counsel overlook the well established rule that a surveyor cannot change the corners established by the Government survey, as such fixed monuments prevail over both courses and distances. *Meyer* v. *Board of Imp. Pav. Dist. No. 3*, 148 Ark. 623, 231 S. W. 12; *Thompson v. Darr*, 174 Ark. 807, 298 S. W. 1.

In the case of *Little* v *Williams*, 88 Ark. 37, 113 S. W. 340, this court approved the following statement by Mr. Justice BREWER, speaking for the court, in *Russell* v. *Maxwell Land Grant Co.*, 158 U. S. 253, 15 S. Ct. 827, 39 L. Ed. 971: "In the nature of things, a survey made by the Government must be held conclusive against collateral attack in controversies between individuals. There must be some tribunal to which final jurisdiction is given in respect to the matter of surveys, and no other tribunal is so competent to deal with the matter as the land department. None other is named in the statutes. If in every controversy between neighbors the accuracy of a survey made by the Government were open to question, interminable confusion would ensue."

That such confusion would result in the instant case, if appellants' theory is adopted, is demonstrated by the testimony of Engineer Peck who stated that if the descriptions of the various properties in the township as reflected by the Government survey were changed to call for *true* north, south, east and west, one corner in the township would be right and the rest wrong, and no owner would be living on his right land. An examination of the map filed plainly shows the line between Arkansas and Oklahoma extending from one clearly designated corner to the other as set forth in the description. These

fixed monuments prevail over course in considering the call "south along said State line."

L. B. Bryan, a civil engineer of long experience, testified that he could take the description used in the petition and the plat filed by the city and follow the entire boundary line as set out in the description and make an accurate survey based thereon; and that although the lines of the Government survey did not run true north, south, east and west, they were commonly so referred to in land descriptions. He disagreed with Engineer Peck who testified that the map and description did not fit in certain instances. The abstractor and another engineer agreed with Mr. Bryan. This testimony, along with the exhibits in the form of maps and plats of the Government survey, amply support the finding and judgment of the circuit court that the territory proposed to be annexed was accurately described and that an accurate map of said area was filed therewith.

The second contention for reversal is that several hundred acres of approximately 7,000 acres embraced in the area sought to be annexed are wholly adapted to agricultural purposes, inappropriate for city purposes and do not represent the actual growth of the city. On this issue the judgment appealed from recites. "That all of said contiguous territory is either platted and held for sale for use as town lots, held to be brought on the market and sold as town property, furnishes the abode for densely settled communities, represents the actual growth of the town beyond its present legal boundaries, needed for proper town purposes or is valuable by reason of its adaptability for prospective town uses and derives special value from said adaptability for city uses and which value is not on account of its use for purposes of agriculture or horticulture; that it is right and proper that said amended petition be granted and that the territory described therein be annexed to and become a part of said City of Fort Smith and that the inhabitants thereof in all respects become citizens of said city."

This finding is in conformity with the test laid down in the leading case of *Vestal* v. *Little Rock,* 54 Ark. 328,

15 S. W. 891, 16 S. W. 291, 11 L. R. A. 778, which has been since followed by our courts. If there is any substantial evidence to support the court's finding, the judgment must be affirmed.

The testimony on behalf of the city shows that many improvements have already been extended over a considerable portion of the territory sought to be annexed. The area contains several densely populated business, industrial and residential sections and there are already 1,691 electric meters, 1,600 gas meters, and 1,033 water meters in the area. According to a count made by witnesses, there are 1,551 houses and 157 business buildings in the area with 53 other buildings under construction. 1,250 patrons in one addition already receive U. S. mail service by foot carrier and a third class post office is maintained in another addition. There are 47 miles of hard-surfaced roads in the territory in addition to three U. S. highways which traverse it. It was also shown that plans had been made by the city to extend fire protection to the proposed area which would result in drastic reduction of fire insurance rates to property owners.

Leigh Kelley is engaged in the real estate business and served on a committee with other citizens to make recommendations to the city in laying out the property to be annexed. He owns a large acreage in the city and also in the territory sought to be annexed. He testified that much of the vacant land in the territory had been platted into city lots and is being held for urban development. After detailing the type and character of all the property in the area affected, he stated that it was all either already urban property or more valuable for development as such and was needed and desirable for the overflow growth of the city.

Sam T. Woods, another member of the committee who resided in the area proposed to be annexed, testified that the entire proposed area was valuable for city purposes and not for agricultural purposes. He described several hundred acres which appellants contend to be valuable only as agricultural lands as ''hardpan soil'' unsuitable for agricultural purposes because moisture did

not penetrate through it although part of it was used for pasture. Nine aerial photographs of the proposed area lend considerable support to the testimony of Kelley and Woods.

In *Vogel* v. *Little Rock,* 55 Ark. 609, 19 S. W. 13, the court said. ''The last contention is that the judgment is wrong because it brings within the city two hundred and forty acres of the lands of Ratcliffe and others. The court might have found from the testimony of Ratcliffe and the agreed state of facts that a part of this land represented the city's growth outside of its limits; and from the testimony of Adams that all the land derived its value from actual or prospective use for town purposes. Upon such finding of facts, the court might have concluded, under the rule established in Vestal's case, that it was right and proper to annex it. Nor does it matter that a considerable part of the land is at present used for agriculture; as its value is derived from its prospective town use, and not from its present country use, it might be properly included within the city. . . .''

Whether a portion of the land involved in the instant case is valuable on account of its use for agricultural purposes and not for its adaptability or prospective use for urban purposes was a sharply disputed question of fact, as was the question whether said land was needed and derived special value from its adaptability for city uses. The testimony of Kelley and Woods was stoutly disputed by witnesses for the appellants who testified that such land was valuable on account of its use for agricultural purposes and not attributable to its adaptability for city uses. If we were considering the case on the preponderance of the evidence we might disagree with the conclusion reached by the trial court. Since we conclude that the testimony on behalf of the city constitutes substantial evidence in support of the finding of the trial court on these issues, we must affirm the judgment. It is so ordered.