ROGERS *v.* CITY OF PINE BLUFF.

5-3085                                                      372 S. W. 2d 620

Opinion delivered October 28, 1963.
[Rehearing denied December 16, 1963.]

*Griffin Smith,* for appellant.

*George N. Holmes* and *John Harris Jones,* for appellee.

PAUL WARD, Associate Justice. This appeal comes from an order of the circuit court approving the annexa-

tion of certain lands to the City of Pine Bluff. The lands consist of 7.52 square miles which lie east, south and west of and are contiguous to said city.

The annexation proceedings were commenced with the filing of a petition by the City on November 20, 1961 and subsequent steps taken, all pursuant to Ark. Stat. Ann. § 19-307 (Repl. 1956) and related sections. There is no contention here that all procedural steps pursuant to all applicable statutes were not taken by the City and the county.

The only point relied on by appellants for a reversal is that "the territory sought to be annexed is unreasonably large". In support, and as a basis of their contention, appellants rely heavily upon our holdings and announcements in the cases of *Vestal* v. *Little Rock,* 54 Ark. 321, 15 S. W. 891 and *Cantrell* v. *Vaughn,* 228 Ark. 202, 306 S. W. 2d 863. It appears to be appellants' contention that the trial court failed to follow the fundamental rules applicable to annexation cases as laid down in the *Vestal* case. There it was said:

". . . city limits may reasonably and properly be extended so as to take in contiguous lands, (1) when they are platted and held for sale or use as town lots, (2) whether platted or not, if they are held to be brought on the market and sold as town property when they reach a value corresponding with the views of the owners, (3) when they furnish the abode for a densely settled community, or represent the actual growth of the town beyond its legal boundary, (4) when they are needed for any proper town purposes, as for the extension of its streets, or sewer, gas or water system, or to supply places for the abode or business of its residents, or for the extension of needed police regulation, and (5) when they are valuable by reason of their adaptability for prospective town uses . . ."

Applying the above general rules to the testimony introduced at the trial court we think this case must be affirmed. The record shows that the lands proposed for

annexation are divided into four separate areas. Area 1 lies east of the city; Area 2 is southeast of the city; Area 3 lies south and west of the city; and, Area 4 lies northwest of the city. Appellants, in support of their position, contend that "A substantial portion of the proposed annexation represents property not settled nor adaptable for settlement"; and that "The city did not demonstrate ability to furnish services to an area of this magnitude." With these contentions of appellants in mind, we can more easily understand the weight and relevancy of the testimony by relating it to each separate Area.

*Area 1.* One witness stated that eight new industries would be brought into the city with annexation—naming them; a realtor said one acre was sold for $2,400 and that he has lands listed for $2,000 per acre. The city planner said 25% is industrial. No landowner is objecting.

*Area 2.* One witness said 50% was built up—part in modern homes; the city engineer said there were 2,152 people on 1,000 acres, and that a drainage bottleneck affects the present city limits. No landowner is objecting to annexation.

*Area 3.* A realtor said this area has no value for agricultural purposes; that the Chamber of Commerce paid $1,000 per acre for a development site—and it is one of three industrial sites available for the city; many new homes are being built; the population is 2,642 for 1,405 acres; it will be provided with sewer facilities— one of the worst problems at present. There is a new school, and building lots sell for $1,250 to $2,000 each. For farm purposes the land is not worth more than $100 per acre but is worth many times that price for building and industrial purposes.

*Area 4.* This area is known as Dew Drop, and appellants say it is a "self-sufficient, unitary community which has worked out its own destiny—that it is economically, geographically and politically an entity", and

that it has practically no affinity to Pine Bluff. There is, however, testimony to the contrary. One witness who lives there said it was a part of Pine Bluff. There was testimony (by appellants) that part of the Area was known as College Heights to Pine Bluff; that some get mail addressed to Pine Bluff and some have telephone, gas, and electricity from Pine Bluff distribution centers; they use the Pine Bluff telephone exchange with no toll charges; and, most of the people are employed in Pine Bluff.

It would serve no useful purpose to detail more of the voluminous testimony. Suffice to say there was testimony to the effect that Pine Bluff was financially able to furnish the annexed areas all necessary utilities as well as fire and police protection, and that it would do so.

In the *Vestal* case, *supra,* it was also pointed out that annexation should be ordered: ''In all cases, however, where actual unity is practicable, legal unity should be ordered as promising the greatest aggregate of municipal benefits.'' In this connection it is pertinent to note the trial court made the finding:

'' 'That the territory sought to be annexed is already part of the Pine Bluff community in practice. All that remained to be done was annexation. The territory . . . is an outgrowth of the City of Pine Bluff and after annexation will make up a homogeneous city.' ''

Other interesting and pertinent findings of facts, set out below, were made by the trial court:

''The property values in the territory sought to be annexed show that the lands are valuable for city use or for adaptability for prospective town use rather than for use or adaptability for use for agricultural purposes.

''The population in the area sought to be annexed is approximately 7,500. In what has been described in the testimony as area four or the Dew Drop area over 2,000 people now live which is more people than live in the county seats of Rison, Star City or Arkansas City.

"The territory sought to be annexed is needed for proper town purposes, the extension of streets, sewer system, gas and water and to provide residences and the City's need for business expansion. Pine Bluff is expanding and expanding rather rapidly.

"The area sought to be annexed is very much in need of police regulation."

We have uniformly held that the order of the circuit court (in annexation cases) will be upheld if it is supported by substantial evidence. See: *Burton* v. *City of Fort Smith,* 214 Ark. 516, 216 S. W. 2d 884: *Mann* v. *City of Hot Springs,* 234 Ark. 9, 350 S. W. 2d 317; and the *Cantrell* case, *supra,* relied on by appellants. Also, the burden was on appellants to show the lands should not be annexed. *Dodson, et al.* v. *Mayor and Town Council, Fort Smith,* 33 Ark. 508.

Since we are unable to say the order and findings of the trial court were not supported by substantial evidence, the same are affirmed.

Affirmed.

HARRIS, C. J., and JOHNSON, J., not participating.